United States v. Lockwood, Ms. Rana Murthy. Good afternoon. May it please the court. Erin Rana Murthy on behalf of Lloyd Lockwood. Your honors, the guidelines range in this case was 33 to 41 months. Mr. Lockwood received a sentence of 120 months, which is nearly three times the high end of that guidelines range. This court previously vacated Mr. Lockwood's first 120-month sentence, yet Mr. Lockwood received the very same sentence on remand. If we're looking in this case at Mr. Lockwood's offense conduct, his criminal history, and the testimony that was presented at the resentencing hearing, there is simply no justification for a 10-year prison sentence for this offense. If we're looking first at... Why? He did give reasons. One of the reasons he gave was precisely your point, the fact that he had a very long criminal history. But if we actually look at that history, we look at the age of that history, we look at the nature of the history, and we look at the gap between that history and when this offense actually occurred. And then on top of that, we look at the explanation that the court gave connecting the previous convictions to this conviction. The connection simply isn't there. This court referenced, pardon me, not this court, the district court referenced convictions in its written opinion that occurred when Mr. Lockwood was 14 and when he was 23 years old. Mr. Lockwood turned 50 years old two days ago. And prior to this offense, he hadn't been convicted of a criminal offense since 2003. The district court simply failed to acknowledge these points. And beyond all of that, your honors, even if we are to assume that Mr. Lockwood's criminal history But if you look at some of the things the judge said, she spoke of being raped by Lockwood. Now that was years ago, okay, granted. Then the judge says, while on pretrial release in this case, Lockwood violated the order of protection by driving down the street, pointing a gun at her, and threatening to kill her. Now that's recent conduct of an extremely dangerous character. That was recent conduct. That was the testimony of Mr. Lockwood's ex-wife and his former sister-in-law. I might add, your honor, that the testimony about the gun was actually contradicted on the stand by that witness's police report in which she told the police at the time of the incident that Mr. Lockwood did not have a gun. But turning back to the criminal history, because I think that's a very important part of this case, even if we assume that Mr. Lockwood should have been given a higher criminal history category, let's say he should have been given the history category of a 6. He was given a 1 here, because most of his convictions were very old. But even if he had been given a 6, if we combine that with an offense level of 20, the guidelines range in that instance would have been 7. But a judge doesn't have to give a guidelines sentence. Pardon me? Judge doesn't have to give a guidelines sentence, just have to give a sentence within the statutory minimum and maximum. That's correct, your honor. But when a judge varies from the guidelines range, they must provide a sufficiently compelling justification. In other words, they have to do more to explain why they are varying from that guidelines range, particularly here when the multiple is almost 3. And this is a statutory maximum sentence, which leaves absolutely no room for other offenders who have, frankly, more culpable conduct, or even offenders that have more egregious criminal history than Mr. Lockwood had. And as I was saying, even if we are to assume that he should have been given a higher criminal history category, the sentence he could have received under the guidelines is still well under the 120-month sentence that he actually did receive in this case. Well, in the first one round we had, Judge Baker had just taken over that case, right? Didn't the other judge retire? Correct, Judge McCoskey was the trial judge. And he gave a rather cursory opinion. So we sent it back because it wasn't enough. Now he writes about six pages, single space or something, a very long and comprehensive analysis. And what you're saying to us is that's too much. And I realize that this guy said he had a decent mechanic business going and some other things. There's some disagreement there. But this is what judges do when they sentence. And he recited a lot of stuff. And you're saying that he really isn't that bad. Some of it's old and other things. We're not trying to say that his criminal history isn't bad or not that bad. And we don't take issue with the length of the court's opinion. We do take issue with the substance. He knew that he was giving an above-guideline sentence. He said that. That's correct. And then he gave some additional facts about Lockwood's history that he thought justified the heavier sentence. That's correct, Your Honor. How do you quarrel with that? But what should the maximum sentence have been? Well, Your Honor, I'm not in a position today to suggest what Mr. Lockwood's sentence should have been. We submitted a very lengthy sentencing memo to the district court when Mr. Lockwood was sentenced. And what did you recommend in it? We recommended, I believe, a sentence of 31 months. Of 33 months, pardon me. The low end of the guidance range. Well, it's our position that it was unreasonable to ask for a 120-month sentence. You did what you needed to do, yeah? Yes, Your Honor. Yes, Your Honor. Our position here is that the reasoning of the district court, regardless of how long the district court's opinion was, we agree it was lengthy. We agree he did address a lot of what was addressed in the sentencing hearing, a lot of Mr. Lockwood's criminal history. But he didn't address the age of that history. He also didn't address the fact that a lot of the allegations that came out during the resentencing hearing were largely uncharged allegations of domestic violence conduct. Now, certainly, I'm not saying that that's not bad conduct or that a court can't consider it. But in this case, there really wasn't a connection between that conduct that was alleged and this particular offense. What the court did hear, in essence, was lengthen Mr. Lockwood's sentence by over six and a half years, largely because of allegations of uncharged domestic violence that came out during his resentencing hearing for an offense in which Mr. Lockwood possessed a device, by the way, which both parties agree did not harm anyone, could not have harmed anyone, and was never intended to harm anyone. I know this is sort of a sidestep. Did you argue this? Did I? Pardon me? Did I argue the first time, Your Honor? No, this time with the judge. No, Your Honor. No, I was not personally representing Mr. Lockwood that time. Okay, I just wanted to make sure of that. Because I know you're appointed. Yes. What kind of people go around putting pipe bombs in mailboxes? I mean, really? Well, people who make bad decisions, Your Honor. Bad decisions. Bad people, not bad decisions. Well, Your Honor, it's tricky. Bad people do things like that. Very bad people. I understand, Your Honor, but we can't... He's got a terrible record. That's correct, Your Honor. But our sentencing system is not set up to increase people's sentences just because we think they're bad people. Oh, that's not true at all. That's not true at all. That's in 3553A, the gravity of the crime, the public indignation at particular criminal activities. Those are permissible considerations for a judge. That's correct, Your Honor. 3353A... Well, you just contradicted yourself. You just said it was incorrect. I said what was incorrect, Your Honor? You said that it was improper to consider merely how bad the crimes are, how morally repulsive. You have to find some actual consequence. That's wrong. Certainly, Your Honor. My point was that we can't simply conclude that someone is a bad person. Oh, I think you can if you have a record like this. What you're saying is essentially you didn't finish, but did we still have to follow the rules? Yes, Your Honor. Okay. I'll save the rest of my time with the rebuttal. Thank you. Okay. Thank you, Ms. Romer-Murphy. Mr. Baum. Thank you, Your Honor. May it please the court. Counsel, Jason Baum on behalf of the United States. This court remanded for resentencing because the first explanation was truncated. On remand, Judge Baker gave a deliberate, reasoned, comprehensive explanation for why he believed Mr. Lockwood was a hopelessly violent individual who had to be incapacitated for 10 years. We believe that explanation is sufficient to justify the sentence that the district court imposed. There was a gap between the last conviction and this conviction, and while counsel refers to that as uncharged domestic violence, that gap was filled in by the testimony of the victim of that domestic violence, which showed that Mr. Lockwood continued in his violent ways even after his last criminal conviction. That gap has been filled in. Mr. Lockwood was a dangerous person in his youth and a dangerous person now. We would ask this court to affirm the sentence unless there are any other questions from the court. Okay, thank you, Mr. Baum. Ms. Romer-Murphy, do you have anything further to say? Murphy. You don't have to, you know. I'll be brief. Your Honor, I would just like to reiterate here that we're not asking this court to say that a court can't consider uncharged conduct as sentencing. We're not asking this court to find that you can't look at a defendant's criminal record, and we're not asking this court to find that a sentencing judge doesn't have discretion. Certainly, they do, but that discretion has limits, and the limits are to be reviewed by this court. And in this case, there's simply no justification for this sentence, and we'd ask that you vacate it and remand for resentencing. Thank you. Thank you. Okay, thank you very much.